## U.S. COURT OF APPEALS FOR THE ELEVENTH CIRCUIT
## CASE NO.: 24-10747-C

District Court Case NO.: 6:23-CV-045

RAIZA ROJAS,

     Appellant,

v.

KATHY HENDRIX, as
EVANS COUNTY GEORGIA
SUPERIOR CLERK OF COURT
In Her Individual Capacity

     Appellee.

--------------------------------------------------------------------------------------------------------------------

**APPEAL FROM THE US FEDERAL DISTRICT COURT
SOUTHERN DIST OF GEORGIA**

**APPELLANT'S APPENDIX**

By: */s/ Raiza Rojas*
RAIZA ROJAS, Pro Se Appellant
68 Wheeler Road NE
Hinesville, GA 31313

**TABLE OF CONTENTS**

1.  Complaint, July 31, 2023,                                                                4-14

2.  Appellant's Response in Opposition to Motion to Dismiss Complaint,  16-26
    September 6, 2023

3.  District Court Order Dismissing the Complaint,                            28-39
    February 12, 2024

4.  Appellant's Notice of Appeal, March 11, 2024                              41

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a correct copy of the foregoing, Appellant's Appendix

was served by mail and email upon counsel for the Appellee, Amelia C. Stevens,

Esquire, Ben Tuten, Esquire OLIVER MANER, LLP., 218 West State Street, P.O.

Box 10186, Savannah, GA 31412 on this 22nd day of April 2024.

By: */s/ **Raiza Rojas***
RAIZA ROJAS, Pro Se Appellant
68 Wheeler Road NE
Hinesville, GA 31313

# TAB 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

RAIZA ROJAS

        Plaintiff,                              Case No.

Vs.                                      **§1983 CONSTITUTIONAL**
                                             **RIGHTS CLAIM**

KATHY HENDRIX, as
EVANS COUNTY GEORGIA
SUPERIOR CLERK OF COURT
In Her Individual Capacity,

        Defendant.

_____/

Plaintiff, a pro se party, files this Complaint against Defendant KATHY

HENDRIX, as Evans County, Georgia Superior Clerk of Court, in her

individual capacity, and says:

## JURISDICTION AND VENUE

1. In May of 2022, the undersigned Plaintiff filed a Writ of Habeas Corpus

   Petition in Evans County Georgia where she was serving a sentence of 180

   days of incarceration.  The named Defendant, Kath Hendrix, as the Superior

   Court Clerk for the county of Evans, Georgia, received the Plaintiff's Writ

   of Habeas Corpus, and received payment in the form of a filing fee in

   exchange as the necessary condition to instigate the Plaintiff's Petition.

2. A Writ of Habeas Corpus Petition/action must be brought in the County where the prisoner is detained, in Evans County, O.C.G.A. § 9-14-43.

3. Evans County Georgia's Superior Clerk of Court runs and operates the State of Georgia's petition and administrative processes as it specifically pertains to petitions for Writ of Habeas Corpus, for inmates detained in Evans County, Georgia, just as the undersigned Plaintiff had been, to be more fully explained *infra*, therefore the Southern District of Georgia, has original jurisdiction of the instant action pursuant to 42 U.S.C. § 1983.

**FACTS**

4. Petitioner represented herself, pro se, for her criminal jury trial that took place on November 29, 2021. Petitioner was found guilty of Count 1- Obstruction of an Officer, a felony, and of two (2) misdemeanors, Count 3- Driving on a Suspended Registration and Count 4-No Proof of Insurance[1]. Petitioner retained Attorney Dale Jenkins after the criminal jury trial had been completed on December 8, 2021. Attorney Jenkins represented the Plaintiff at her sentencing hearing on January 24, 2022. At the sentencing hearing, Petitioner was sentenced to 5 years of probation for the felony charge of "Obstruction of an Officer" and remanded to a Department of Corrections Detention Center for 180 days of confinement.

---

[1] Petitioner was driving her employer's commercial moving truck-vehicle and had no obligation to maintain insurance on it.

5. On February 15, 2022, Plaintiff's counsel, Attorney Dale Jenkins sent the undersigned Plaintiff correspondence, see attached **Exhibit 1 and Exhibit 2**, making it expressly clear that he would no longer represent the Plaintiff and therefore would not assist nor facilitate the filing of any post-sentencing Motions for New Trial or any other post-sentencing relief preserving any of the Plaintiff's rights, namely the exculpatory evidence that was not presented to the jury concerning the "Obstruction" charge and Attorney Jenkins understood the Plaintiff's desire in this regard. Attorney Jenkins did not convey his unilateral resignation to the Clerk of Courts nor to the trial court that he had decided to cease and desist from any further duties with regard to the undersigned Plaintiff as his client. All post-trial Motions for relief were due to be filed by or before February 23, 2022.

6. Plaintiff filed her Pro Se Motion for New Trial on February 22, 2022, because she accepted the express and unequivocal words from Mr. Jenkins that he no longer represented her.

7. On March 16, 2022, the trial court dismissed the Petitioner's Pro Se Motion for New Trial wholly on the basis that Georgia law and precedent prohibits a trial court from considering any written Motion filed by a party who still has counsel of record. Without evaluating the merit of the

Petitioner's Pro Se Motion for New Trial, the trial court dismissed Petitioner's paper as defective (**Exhibit 3**-Order).

8.  On March 22, 2022, one (1) month after all post sentencing Motions could be timely filed, Attorney Jenkins moved the trial court for an order allowing him to withdraw as counsel for the Plaintiff.  Mr. Jenkins did not advise the Court that his unilateral decision to terminate his counsel may have significantly affected the Plaintiff's timely efforts to address post sentencing or exculpatory evidence deprivations in trial.

9.  After receiving the trial court's order of March 16, 2022, Plaintiff filed a Motion to Abate and a Motion for Reconsideration (**Exhibits 4 and 5**). Both Motions were intended to advise and show the trial court that Plaintiff's Pro Se Motion for New Trial was filed due to her reasonable belief that Attorney Dale Jenkins had abandoned her as a client, _prior_ to the post-sentencing relief/Motion deadline, and as such, these Motions sought to provide context, and the Plaintiff provided a true copy of Mr. Jenkins' letters to the trial court to affirm the basis of her belief.  Plaintiff sought to have the trial court abate/suspend/continue her time deadline for the opportunity to file a Pro Se Motion for New Trial due to her undeniable, irrefutable lack of counsel that prejudiced her in terms of filing Motions for post-trial relief.

10. On April 6, 2022, the trial court granted Dale Jenkins Motion to Withdraw.

11. On April 25, 2022, the trial court denied both of the Plaintiff's Motions, to wit the Motion to Abate and Motion for Reconsideration, and once again ruled that State procedural issues, rules, and protocols, O.C.G.A. §5-5-40(b) prevented the court from considering the merits or substance as to what facts or circumstances deprived Petitioner from filing a timely/appropriate Motion for New Trial on February 22, 2022 notwithstanding the absence of counsel through no fault of the Plaintiff irrespective of merits of the potential exculpatory evidence issue.

12. The trial court stated in its Order of April 25, 2022, that Petitioner had no other option to bring forth such a serious Constitutional deprivation, to wit, the loss of bringing forth substantive issues warranting a new trial, except by and through OCGA §9-14-42 (A Writ of Habeas Corpus) and directed the Plaintiff to file such a paper as the only relief that the Plaintiff could now avail herself to in order to bring about the correct relief, and as such the trial court actually affirmed that O.C.G.A. §5-6-39(a), State rules, procedures, and protocols prohibited it from suspending, prolonging, modifying, and/or correcting anything to adjust for the Court's incorrect assumption notwithstanding the reality of the facts now known to the court.

13. In May of 2022, the undersigned Plaintiff filed a Writ of Habeas Corpus in Evans County Georgia with the Evans County Superior Clerk of Court, the county where the undersigned was serving her 180 days of incarceration.

14. The Defendant <u>never</u> afforded the Plaintiff with any process that led to or was in furtherance of holding and providing the Writ of Habeas Corpus hearing as specifically contemplated pursuant to the filing fee, and the very nature of the Writ of HC, and for this reason, the Plaintiff completed all 180 days of her incarceration until she was released on August 7, 2022.

15. The Defendant received multiple requests from the Plaintiff and persons acting on behalf of the Plaintiff, for the chance and opportunity to have the Writ of Habeas Corpus issues brought to court for a hearing so as to address the legal issues the undersigned was blocked and prevented from addressing due to the trial court's belief that she had counsel on February 22, 2022.

16. The Defendant offered various administrative reasons that either seemed outdated, such as: (a) generalized COVID-19 concerns that had long been addressed and/or redacted and/or modified and/or removed as public policy since 2021; (b) inadequate transportation to drive inmates to courts on a consistent basis; and/or (c) the congested busy existing court docket(s).

17. Defendant's reasons were not adequate grounds for circumventing, ignoring, and acting completely indifferent to the Plaintiff's federal right of

due process, per a Writ of Habeas Corpus, known to be perhaps the most substantive federal and constitutional right enjoyed by all Americans since the earliest days of the United States' national history, as it is supposed to compel a timely hearing before a court if an American believes themselves to be wrongfully, mistakenly, or unlawfully incarcerated.

18. The Defendant's own peculiar, contrary, unwritten, and "new" rigid rules and protocols whereby the Defendant took in actual payment, and thereafter completely frustrated, blocked, prevented, and denied every facet of a Petition for Writ of Habeas Corpus was objectively and obviously unreasonable, and therefore the Defendant did not act objectively, but acted legally objectively unreasonable as a public official transacting business long established and recognized throughout the nation since the 1700s, a basic fundamental fact to any Clerk of Court, and as such violated the Plaintiff's clearly established rights as defined by 42 U.S.C. § 1983.

19. The Plaintiff is not alleging that had she been given a new trial or if the exculpatory evidence was duly considered for any purpose the Plaintiff wanted it to support, that a different or more favorable outcome would have resulted, only that there was no objectively reasonable basis for the Defendant, a public official to ignore the oldest, most time honored pillar of American freedom, to wit, the right to be immediately brought before a

tribunal if there is any sincere notion on the part of an American who is incarcerated or detained that they are being unlawfully, mistakenly, or wrongfully detained, per the singular essence of a Writ of Habeas Corpus.

20. The Superior Clerk of Court for Evans County Georgia, the named Defendant, acted under Color of State law, which is a necessary element to correctly alleging such a cause of action per the 11th Circuit Pattern Jury Instructions.

21. The Defendant's failure to act upon the Plaintiff's Writ of Habeas Corpus petition deprived the undersigned of her United States Constitution federal and national rights as an American citizen, the second necessary element to correctly alleging such a cause of action per the 11th Circuit Pattern Jury Instructions, is the deprivation of a clearly established right.

22. Defendant is not entitled to immunity, because while she was acting within the scope of her discretionary authority, it was obvious and objectively unreasonable to casually discard and dispense with the heart, essence, and singular purpose of a Writ of Habeas Corpus, which calls for a timely and/or immediate hearing, by continually and consistently placing novel, trivial, and nonsensical impediments in front of the Plaintiff so as to totally and absolutely deprive her of the very hearing that the Petition and Writ was supposed to afford pursuant to the filing fee provided for it.

23.  No factual particularized previous case law concerning a Clerk of Court choosing to keep a prisoner detained and deprived of their most fundamental American U.S. Constitutional right in the face of an accepted Writ of Habeas Corpus that Clerk/Defendant has duly received in the course of the public service is needed to sustain this action because the facts at bar leave no question to the objective unreasonableness of the Defendant's action as previously set forth and as per, *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982),

If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained

24.  The actions of The Defendant, in her individual capacity, acting under color of State law, caused the undersigned to be deprived of arguably the most important, well-known, and long standing American fundamental U.S. Constitutional right after she duly filed a Petition of Writ of Habeas, to which the Defendant acted objectively unreasonable by ignoring it by opting to leave her incarcerated without affording the Plaintiff any hearing, therefore the Defendant was the legal cause and the proximate cause of the substantial injuries, prejudice, and damages suffered by the Plaintiff.

25.  The conduct of the Defendant as alleged *supra* was objectively unreasonable because the conduct clearly violated clearly established rights per a Writ of Habeas Corpus under the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, the 5th Amendment, and a Clerk of Court, of all public officials in the United States, is expected to have such rudimentary knowledge, and for the foregoing reasons, the Defendant was the direct and proximate cause of the Plaintiff's losses, to wit the ongoing deprivation of her liberty and freedom, as the failure to accommodate the hearing was the condition precedent to release and all possible Court relief.

**WHEREFORE**, RAIZA ROJAS prays for Judgment for any and all damages recoverable under law against DEFENDANT KATHY HENDRIX in her Individual Capacity as the SUPERIOR CLERK OF COURT FOR EVANS COUNTY GEORGIA, including general compensatory damages, taxable costs and attorneys' fees in the event Plaintiff should later retain legal counsel, and all relief this Court deems just, proper, and can grant.

**Plaintiff demands a jury trial.      Dated this ___ day of July 2023**.

<u>**VERIFICATION OF PETITIONER**</u>

The undersigned Petitioner has read all of the foregoing statements as contained herein, above and *supra*, and as such affirms the truth and correctness of these statements and assertions.

_____
RAIZA ROJAS, PRO SE, Plaintiff
68 Wheeler Road, NE
Hinesville, GA 31313

TAB 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

RAIZA ROJAS

          Plaintiff,                   Case No. 6:23-CV-045

Vs.

                                        **PLAINTIFF'S RESPONSE IN**
                                        **OPPOSITION TO**
KATHY HENDRIX, as                **DEFENDANT'S MOTION**
EVANS COUNTY GEORGIA       **TO DISMISS COMPLAINT**
SUPERIOR CLERK OF COURT
In Her Individual Capacity,

          Defendant.
_____/

      Plaintiff, as a pro se party, requests every equitable and fair understanding

from this honorable and experienced court, and files the instant Response in

Opposition to Defendant's Motion to Dismiss the Complaint, {DE} #6 and says:

### Summary of the Issues and Arguments  (1-3)

1.  The Defendant, a State of Georgia employee, is presently the best person to be

named in the context of this old defensive "hat game"; i.e., "*Who has the hat*?"

Often this game is featured in hospital litigation where the medical negligence

defense is an ever-shifting blob that continues to change so that any of 8 different

people could all reasonably be the source of the tort liability.  As it typically goes,

while the focus on who might have the hat stays blurry, non-stop defensive

Motions take aim at a full case dismissal or the plan changes so as to prevent the

discovery, and "voila!", time runs out while you are lost in the muck of the "hat

game" ruse.  This well-known game actually makes the need for discovery to

occur, ever clear.  The Defendant's Office received the Plaintiff's Writ of Habeas Corpus Petition, (from henceforth, "WHC", for brevity) on May 2, 2022.   The WHC was absolutely ignored.  The Plaintiff finished serving the entirety of the incarceration, multiple months, without the one (1) hearing that a WHC has long prescribed for Americans since the 1700s and as expressly mandated by Georgia State law.  Plaintiff was not informed by the Defendant's office of any judicial assignment of the WHC, nor was the Plaintiff directed by the Defendant's office to take her/their questions about the mandatory forthcoming WHC hearing to anyone other than themselves!

2.  Next, let us not dishonor time itself with arguments about whether a WHC, the oldest best known clearly established constitutional right on the books is widely recognized as itself!  We all know, water is wet; there's no need to debate it.  A WHC has its own special statutes in every State; Is the central legal feature of hundreds of reported cases across the U.S.; and especially for pro se people, it is the most widely used means to address perceived court mishaps that may have caused their incarceration.  *Rolland v. Martin*, 281 Ga. 190, 191 (Ga. 2006).

3.  Defendant produced exhibits contemporaneous to filing their Motion to Stay the Discovery, {DE #7} as part of the Plaintiff's public records request.  The Defendant's exhibits paint a picture that the Plaintiff's WHC continued to be

shuffled and passed around with no sense of urgency. Notably, these exhibits show that Defendant's Office continued to act in furtherance of scheduling the hearing, as per the ongoing requests for updates about the hearing continued to be made by the undersigned Plaintiff and/or her agents/representatives. (See **Exhibit 1**). There is no evidence at hand at this time identifying any particular/specific judge who was assigned the WHC, nor any of the judicial internal policies and/or office customs/practices that occur between the Defendant's Office and the Court, administrative things which may fall under the umbrella of "the court". Time should be afforded for the Plaintiff to amend the Complaint to name "Joe Doe" pseudonym defendants, because the Defendant's actions are compelling this kind of fair and reasonable reaction needed to meet the challenge of this "hat game". The 2-year statute of limitations is a short period of time. The Plaintiff should be given an opportunity to pursue the claim's merit.

### _Defendant's Motion Overshoots the Issues With Patchwork Arguments_

4. The Defendant first argued that (1) The Clerk of Courts has no statutory authority to assist or coordinate in the scheduling of WHC hearings. The actual statute cited by the Defendant, in its entirety, has two (2) sections that provide for the Clerk to be able to serve and attend to the Court's business as needed/desired. Secondly, the Defendant cut-out portions of the Uniform Superior Court Section that expressly governs "Civil Jury Trials", Section 8, but the Defendant wholly

sidestepped Section 6, that deals with "**Hearings**", NOT a trial, because said

section has no comment about a WHC hearing. Their mish-mash soup of

arguments borrow from here, and take from there irrespective of context, or

chapter headings. Here's what the Defendant said in their Motion on Pgs. 5-6 *infra*,

> *In Georgia, the Clerk of Superior Court does not schedule hearings in civil cases; rather, that task falls to the presiding judge*
>
> *That is because—as discussed above—it is the **assigned** judge's responsibility to schedule hearings, not the responsibility of the Superior Court Clerk*

The Defendant then relied upon the below Uniform Superior Court Rule:

Rule 8- Civil Jury **Trial** Calendar.

> "The assigned judge has the sole responsibility for setting hearings in all actions assigned to that judge, for the scheduling of **all trials**" Ga. R. Super. Ct. 8.1

Nobody is arguing that Motions in Limine, and other necessary housekeeping

Motions that precede a trial fall within the purview of Rule 8.1. Whereas a more

balanced reading is Rule 6.3 which does not govern trials, but rather **hearings**, and

Plaintiff's WHC petition has always been about obtaining a hearing, not a trial.

> "Unless otherwise ordered by the court, all motions in civil actions, including those for summary judgment, shall be decided by the court without oral hearing, **except motions for new trial and motions for judgment notwithstanding the verdict**." Ga. R. Super. Ct. 6.3

## *The Georgia Civil Practice Act*

Defendant tosses this citation into the Motion as pure fluff. It has no relevance.

The cases all say that a WHC is a civil action. There is no argument about how

such a petition is to be viewed, but the Defendant's cases all regard statute of

limitations matters pertaining to litigants filing, dismissing, and re-filing such WHC petitions. All the fluff and sputter actually sheds no light at all in any regard as to why the Defendant failed to make a judicial assignment, or what interplay and/or interaction between a staff attorney and the Defendant caused the Defendant to continue standing out in front, in a ministerial capacity, as the only conduit representing the means to the end, i.e., the hearing the Plaintiff was seeking.

*The Statute Authorizes the Clerk of Court to Attend to Additional Court Needs*

Part of the Defendant's mish-mash then purports to identify 18 express rules that prohibit the Clerk of Court from being able to attend to administration, handling, scheduling, and serving the Court. There are two (2) provisions that enlarge the scope of the Clerk's roles, infra, In short, Defendant tried to diminish her authority:

> **(2)** To attend to the needs of the court through the performance of the duties of the clerk required and enumerated by law, or as defined in court order, or rules; Ga. Code § 15-6-61; and
>
> **(20)** To perform such other duties required by law or as necessarily appertain to the office of clerk of superior court; and Ga. Code § 15-6-61

We all know that Clerks do all kinds of things to serve the Courts including Scheduling Foreclosure Sales; Setting Initial Case Management Hearings at the time of initial case filing/docketing; issuing Mediation Orders with typeface that can be generated and/or applied electronically bearing judicial signatures/stamps as needed and/or necessary "to attend to the needs of the court". The Defendant neglected to find any express authority, though it is shown *supra*, accounting for

the written and unwritten rules allowing the Clerk to perform  other for court.

Irrespective of what one Georgia judge or courthouse does, each judge and

courthouse always have their own rules, practices, customs, protocols, and

procedures, therefore it is silly to argue that a hard bright line rule exists all over

the State, when we all know otherwise.  The Defendant continued to repeat, "the

Court is not the Clerk", but asking the Court to take a literal meaning without

knowing what orders, written/unwritten rules, practices, habits, and customs were

at play that conceivably involved the Defendant "attending to the need of the

court", avoids circumstances as expressly provided for above/*supra*.  Only

discovery will reveal the "protocols" that have been at play between the Defendant,

the staff attorney, the lack of a judicial assignment, and the constitutional

deprivation suffered by the Plaintiff.

Never Was a Judicial Assignment Docketed on the Record by Defendant

Moreover, with regard to the case being docketed, consider there was never

any judicial assignment shown to have occurred.  Even the Answer filed by the

Evans County Warden, Sandy West, lacks a judicial assignment.  None had ever

been made.  Is it not the Clerk of Court's job to at least make the judicial

assignment upon the filing of the WHC Petition?  Whether it is part of the job, or is

not, the time is *not* at hand to ferret out all of the substantive evidentiary facts, it is

simply about measuring the "Sufficiency of the Pleading".  There is no judicial

assignment reflected on the WHC case Index (See **Exhibit 2**). Even looking back

on **Exhibit 1**, the June 21, 2022, email between the Defendant and a law clerk

named Rachel Purcell, there's no judicial designation referenced therein either.

The first time there is any judicial designation, it is found on the Order of Transfer,

where there finally appears an "MK" near the case number for the judge who

ultimately signed the order of Transfer on April 14, 2023. Nearly 11 months after

the undersigned Plaintiff filed the WHC petition with the Defendant (See **Exhibit

3**).

The Writ of Habeas Corpus Transfer Order of April 14, 2023

To add insult to injury, almost as a passing footnote, consider **Exhibit 3**, the

Order of Transfer. It incorrectly finds that jurisdiction did not exist in Evans

County, where the undersigned Plaintiff was being jailed, but rather in the county

where "conviction" occurred. The Habeas Court even cited the Georgia State

statute, which actually says, jurisdiction is Evans County, because jurisdiction lies

in the county where the person is being detained. See *infra,*

> "A petition brought under this article must be filed in the superior court of the
> county in which the petitioner is being detained." Ga. Code § 9-14-43

## Conclusion

At this point, at the start of the "Hat Game", all we can be certain of is that

the Complaint was sufficiently pled. The Defendant wants this Court to dive into

deeper waters despite the absence of evidence and facts; rule on pure assumption,

conjecture, and argument without having the operational and normal mechanics, rules, practices, and protocols that occur after the Defendant accepts a WHC. While we can agree the law is as follows,

OCGA § 9-14-47 imposes an unqualified duty on the habeas court to set a hearing " Rickett v. State, 276 Ga. 609, 610 (Ga. 2003)

We cannot be certain why there was never a judicial assignment, nor can we be certain as to why the Staff Attorney, Rachel Purcell, omitted the name of any assigned judge if the delay was from an authority above her. Through Exhibit 1, the email, we know that Ms. Purcell and the Defendant are aware of the need to set the hearing, and we see there is a transparent cavalier and disinterested attitude that leaps off their email communication. The facts are not yet truly before this court.

The Defendant has tried to diminish the significance of the Writ of Habeas Corpus to being nothing more than just another garden-variety civil event to eventually be scheduled or docketed by the Clerk or to be eventually put on the Court's calendar like a Motion to Compel Interrogatories; Motion for a Continuance; Motion for a Continuance; Motion to Re-Set Sale Date, etc. Yet, there are notable differences, such as these Motions already have pre-existing judicial assignments, and they do not evoke a new filing fee payable to advance such as is the case with a Writ of Habeas Corpus petition. The Defendant also fails to note that most of today's civil hearings in the State of Georgia can simply be scheduled on-line by the attorneys in those cases, therefore we acknowledge yet

another route that moves hearings outside of the traditional rules that supposedly involves each assigned judge personally scheduling all of their own hearings on their assigned cases. That simply does not comport with reality.

Secondly, water is indeed wet. Time spent and/or wasted arguing about whether the Defendant and others involved understood that they were violating a long-established constitutional right by denying a WHC petitioner due process through their intentional malfeasance, is exasperating. It is tantamount to feigning bewilderment when people stand when the National Anthem is played. One cannot reach for a pillar of American truth that is bigger, grander, or larger than a Writ of Habeas Corpus. Hundreds of reported cases particular to the due process that must be afforded a WHC, makes this a simple fact beyond dispute for any Clerk of Court.

Accordingly, the adjudication of his habeas petition had to be preceded by a statutorily-required hearing (OCGA § 9-14-47; Rickett v. State, 276 Ga. 609 (2) ( 581 SE2d 32) (2003)), which had to comport with the fundamental requirements of due process — notice and opportunity to be heard (see Armstrong v. Manzo, 380 U.S. 545, 550 ( 85 SC 1187, 14 LE2d 62) (1965)), as well as the petitioner's right to meaningful access to the courts and meaningful communications with the courts. Howard v. Sharpe, 266 Ga. 771 (1) ( 470 SE2d 678) (1996). See also Augustin v. Sava, 735 F2d 32, 37 (2nd Cir. 1984) ("The very essence of due process is a `meaningful opportunity to be heard.'"); *Ramos v. Terry*, 279 Ga. 889, 890-91 (Ga. 2005)

A habeas corpus court is **required** to hold a hearing on the issues raised in the petition "within a reasonable time after the filing of defensive pleadings." OCGA § 9-14-47. Given this requirement, a habeas corpus court can dismiss a petition without a hearing only when it is able to determine from the face of the petition that it is without merit. Mitchell v. Forrester, 247 Ga. 622 ( 278 SE2d 368) (1981), *Lucas v. Walker*, 287 Ga. 864, 865 (Ga. 2010)

For the foregoing reasons, the Plaintiff asks this Court to deny the Defendant's Motion to Dismiss or in the alternative allow leave to amend to include pseudonym Defendant names to share the joint and several liability that may be afoot connecting the Defendant to other State of Georgia court employees.

Respectfully submitted.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing, Plaintiff's Response in Opposition to the Defendant's Motion to Dismiss, was served by mail upon counsel for the Defendant, Amelia C. Stevens, Esquire, Ben Tuten, Esquire OLIVER MANER, LLP., 218 West State Street, P.O. Box 10186, Savannah, GA 31412 on this 6th day of September 2023.

By: */s/ Raiza Rojas*_____
RAIZA ROJAS, Pro Se Plaintiff
68 Wheeler Road NE
Hinesville, GA 31313

TAB 3

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| RAIZA ROJAS,<br><br>    Plaintiff,<br><br>        v.<br><br>KATHY HENDRIX, as Evans County<br>Georgia Superior Clerk of<br>Court, in her individual<br>capacity,<br><br>    Defendant. | *<br>*<br>*<br>*<br>*    CV 623-045<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

**O R D E R**

Before the Court is Defendant's motion to dismiss.  (Doc. 6.)
For the following reasons, Defendant's motion is **GRANTED**.


**I. BACKGROUND**

After a jury trial in state court, Plaintiff was found guilty
of a felony and two misdemeanors and was sentenced to five years
of probation and one hundred eighty days of confinement.  (Doc. 1,
¶ 4.)   While incarcerated, Plaintiff filed a petition for a writ
of habeas corpus with the Evans County Superior Court.   (Id. ¶
13.)   Plaintiff alleges Defendant — the Clerk of Court for the
Evans County Superior Court — "never afforded . . . Plaintiff with
any process that led to or was in furtherance of holding and
providing the [w]rit of [h]abeas [c]orpus hearing," even after

26

receiving multiple requests to do so.  (Id. ¶¶ 14-15 (emphasis in original).)  On July 31, 2023, Plaintiff filed the present lawsuit. (Doc. 1.)  Plaintiff asserts a single claim under 28 U.S.C. § 1983, contending Defendant's failure to set an evidentiary hearing on her habeas petition violated her Fifth and Fourteenth Amendment rights.  (Id. ¶¶ 17-25.)  On August 23, 2023, Defendant filed a motion to dismiss, which Plaintiff opposes.  (Docs. 6, 8.)

## II. LEGAL STANDARDS

Defendant's motion to dismiss is governed by the following legal standards.

### A. Rule 12(b)(6)

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984).  Pursuant to Federal Rule of Civil Procedure 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." Id. The Court must accept all well-pleaded facts in the complaint as true and construe all reasonable inferences therefrom in the light most favorable to the plaintiff. Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 557). A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Furthermore, "the court may dismiss a complaint pursuant to [Rule] 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

## B. Qualified Immunity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Grider v. City of Auburn, 618 F.3d 1240, 1254 (11th Cir. 2010) (alterations and internal quotation marks omitted) (quoting Vinyard v. Wilson, 311 F.2d 1340, 1346 (11th Cir. 2002)). "Qualified immunity from suit is intended to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Id. (citation and internal quotation marks omitted). In other words, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Robinson v. Payton, 791 F.3d 824, 829 (8th Cir. 2015) (citing Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004)).

"To receive qualified immunity, the government official must first prove that [s]he was acting within h[er] discretionary authority." Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing Vinyard, 311 F.2d at 1346). Once a defendant establishes she was acting within her discretionary authority, "the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." Gray ex rel. Alexander v. Bostic, 458 F.3d 1295,

1303 (11th Cir. 2006) (quoting <u>Lumley v. City of Dade City</u>, 327 F.3d 1186, 1194 (11th Cir. 2003)). Accordingly, the Court must turn to the complaint to see if Plaintiff alleged sufficient facts to demonstrate Defendant is not entitled to qualified immunity. <u>Bowen v. Warden Baldwin State Prison</u>, 823 F.3d 1312, 1319 (11th Cir. 2016).

"An official enjoys qualified immunity unless: (1) the plaintiff alleges facts establishing that 'the defendant's conduct violated a constitutional or statutory right'; and (2) the violated right was clearly established at the time of the defendant's alleged misconduct." <u>Wilson v. Sec'y, Dep't of Corr.</u>, 54 F.4th 652, 660 (11th Cir. 2022) (citation omitted). Thus, "[i]f a defendant asserts a qualified immunity defense in a Rule 12(b)(6) motion to dismiss, the court should grant qualified immunity if the plaintiff's complaint fails to allege a violation of a clearly established constitutional or statutory right." <u>Williams v. Bd. of Regents of Univ. Sys. of Ga.</u>, 477 F.3d 1282, 1300 (11th Cir. 2007) (citation omitted). The Court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009).

### III. DISCUSSION

Defendant first moves to dismiss Plaintiff's complaint based on qualified immunity. (Doc. 6, at 4-8.) Qualified immunity first requires proof that the government official was acting within her discretionary authority. Gonzalez, 325 F.3d at 1234 (citation omitted). Plaintiff concedes Defendant was acting within her discretionary authority. (Doc. 1, ¶ 22.) Thus, "the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." Gray, 458 F.3d at 1303 (citation omitted).

The Court exercises its discretion to first address the second prong of the qualified immunity analysis — whether the right violated was clearly established at the time of Defendant's purported misconduct. Wilson, 54 F.4th at 660 (citation omitted); Pearson, 555 U.S. at 236. The Eleventh Circuit has held a right can be deemed clearly established in one of three ways:

> (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

Hill v. Cundiff, 797 F.3d 948, 979 (11th Cir. 2015) (citation omitted). Moreover, Plaintiff has the burden of showing the purported right was clearly established at the time of Defendant's alleged misconduct. See Gates v. Khokhar, 884 F.3d 1290, 1297 (11th Cir. 2018).

■

31

Plaintiff does not cite any caselaw or principle within the Constitution, a statute, or caselaw that clearly establishes a constitutional right to an evidentiary hearing on her petition for a writ of habeas corpus. See Hill, 797 F.3d at 979. In fact, Plaintiff states:

> No factual particularized previous case law concerning a Clerk of Court choosing to keep a prisoner detained and deprived of their most fundamental American U.S. Constitutional right in the face of an accepted [w]rit of [h]abeas [c]orpus that Clerk/Defendant has duly received in the course of the public service is needed to sustain this action . . . .

(Doc. 1, ¶ 23.)   Rather, Plaintiff seems to rely on the "obvious clarity" method of showing the purported right was clearly established by asserting no caselaw citation is necessary "because the facts at bar leave no question to the objective unreasonableness of . . . Defendant's action." (See id. (citation omitted); see also Hill, 797 F.3d at 979. In Plaintiff's view,

> it was obvious and objectively unreasonable to casually discard and dispense with the heart, essence, and singular purpose of a [w]rit of [h]abeas [c]orpus, which calls for a timely and/or immediate hearing, by continually and consistently placing novel, trivial, and nonsensical impediments in front of . . . Plaintiff so as to totally and absolutely deprive her of the very hearing that the [p]etition and [w]rit w[ere] supposed to afford pursuant to the filing fee provided for [them].

(Doc. 1, ¶ 22.)[1]

---

[1] One such impediment, Plaintiff notes, was Defendant's failure to assign a judge to Plaintiff's habeas case. (Doc. 8, at 7.)   To the extent Plaintiff intends to assert a new § 1983 claim against Defendant for failing to assign a judge to her habeas case, the claim fails because Plaintiff does not state how

The Supreme Court has reiterated "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" White v. Pauly, 580 U.S. 73, 79 (2017) (citation omitted). Meanwhile, the Eleventh Circuit has made clear "obvious clarity" cases are rare. Coffin v. Brandau, 642 F.3d 999, 1015 (11th Cir. 2011) (citations omitted); Rodriguez v. Farrell, 280 F.3d 1341, 1350 n.18 (11th Cir. 2002). The critical inquiry for this Court is whether the law provided Defendant "fair warning" her conduct violated the Fifth and Fourteenth Amendments. Hope v. Pelzer, 536 U.S. 730, 739 (2002); Coffin, 642 F.3d at 1013-14.

As mentioned previously, Plaintiff does not cite any authority establishing the right to an evidentiary hearing on a habeas petition, and the Court is unaware of any.[2] Without such authority, the Court cannot find Defendant had "fair warning" that

---

this conduct violates her constitutional rights, thus entitling Defendant to qualified immunity. See Newsome v. Chatham Cnty. Det. Ctr., 256 F. App'x 342, 344 (11th Cir. 2007) (holding that, where pro se plaintiff's response to magistrate judge's recommendation alleged new facts, the response should have been construed as a motion to amend the complaint); but see Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (holding the defendant was entitled to qualified immunity because "the facts alleged do not show the violation of a constitutional right").

[2] Plaintiff repeatedly asserts her habeas petition entitles her to "a timely and/or immediate hearing." (See, e.g., Doc. 1, ¶ 22.) To support her motion to dismiss, Defendant points to O.C.G.A. § 9-14-47, which provides that "within a reasonable time" after the respondent files an answer or a motion to dismiss, "[t]he court shall set the case for a hearing on the issues" presented in the habeas petition. (Doc. 6, at 6.) To the extent Plaintiff contends this statute gives her a right to a hearing, § 1983 is inappropriate because § 1983 may only be used to vindicate federal, not state, rights. See Blessing v. Freestone, 520 U.S. 329, 340 (1997) ("[T]o seek redress through § 1983, . . . a plaintiff must assert the violation of a federal right . . . ." (emphasis added)).

her allegedly wrongful conduct violated Plaintiff's Fifth and Fourteenth Amendment rights. See Hope, 536 U.S. at 739; Coffin, 642 F.3d at 1013-14. Accordingly, the Court finds Plaintiff did not carry her burden of showing the right at issue was clearly established at the time of Defendant's purported misconduct; thus, Defendant is entitled to qualified immunity. See Bostic, 458 F.3d at 1303; Bd. of Regents, 477 F.3d at 1300.

The Eleventh Circuit has stated, "[w]hen it appears that a pro se plaintiff's complaint, if more carefully drafted, might state a claim, the district court should give the pro se plaintiff an opportunity to amend h[er] complaint instead of dismissing it with prejudice." Jemison v. Mitchell, 380 F. App'x 904, 907 (11th Cir. 2010) (citation omitted). However, the Eleventh Circuit has also instructed dismissal with prejudice, without first providing leave to amend, is proper "if the pro se plaintiff has indicated that [s]he does not wish to amend h[er] complaint or if a more carefully drafted complaint could not state a valid claim." Id. (citation omitted). The latter applies here. For the reasons discussed above, Defendant is entitled to qualified immunity because Plaintiff cannot show the right to an evidentiary hearing on her habeas petition under the Fifth and Fourteenth Amendments was clearly established at the time of Defendant's alleged misconduct. As a result, the Court concludes that, even if it provided Plaintiff an opportunity to amend, she cannot state a

claim against Defendant.  Accordingly, the Court need not provide Plaintiff an opportunity to amend her complaint before dismissing it with prejudice.  *See* *id.*  Therefore, Defendant's motion to dismiss (Doc. 6) is **GRANTED**.

Finally, Plaintiff requests the Court grant her "leave to amend to include pseudonym Defendant names to share the joint and several liability that may be afoot connecting the Defendant to other State of Georgia court employees."  (Doc. 8, at 10.)  "As a general matter, fictitious-party pleading is not permitted in federal court."  Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010).  A limited exception to this rule exists "when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage,'" and thus discovery would uncover the unnamed defendant's identity.  Id. (citation omitted).  Because Plaintiff provides no description of the defendants other than they are "State of Georgia court employees," the Court finds fictitious-party pleading inappropriate here and **DENIES** Plaintiff's request for leave to amend.

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendant's motion to dismiss (Doc. 6) is **GRANTED**.  Accordingly, Plaintiff's complaint is **DISMISSED WITH PREJUDICE**.  The Clerk is **DIRECTED** to **TERMINATE** all motions and deadlines, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this _____ day of February,

2024.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

Tab 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

RAIZA ROJAS

                Plaintiff,                                Case No. 6:23-CV-045

Vs.

                                              **PLAINTIFF'S NOTICE OF**

KATHY HENDRIX, as                                  **APPEAL**

EVANS COUNTY GEORGIA
SUPERIOR CLERK OF COURT
In Her Individual Capacity,

                Defendant.

_____/

## NOTICE OF APPEAL
----------------------------------

**NOTICE IS GIVEN** that RAIZA ROJAS, the undersigned Pro Se Plaintiff in the

above-named case, hereby appeals to the United States Court of Appeals for the

Eleventh Circuit from the Final Order of Dismissal of the Complaint and action

entered by this U.S. District on the 12TH day of February 2024 (**Exhibit 1).**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing, Plaintiff's

Notice of Appeal was served by mail upon counsel for the Defendant, Amelia C.

Stevens, Esquire, Ben Tuten, Esquire OLIVER MANER, LLP., 218 West State

Street, P.O. Box 10186, Savannah, GA 31412 on this 8th day of March 2024.

                                      By: */s/ **Raiza Rojas**_____

                                      RAIZA ROJAS, Pro Se Plaintiff
                                      68 Wheeler Road NE
                                      Hinesville, GA 31313